# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

SALVADOR RAYMUNDO MATEO
FRANCISCO,

      Petitioner,

v.                               No. 1:25-cv-1229 MIS-GJF

GEORGE DEDOS, et al.,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT (DKT. NO. 1) AND NOTICE OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (DKT. NO. 3)

THIS MATTER is before the Court on the *Verified Petition for Writ of Habeas Corpus and Complaint* (Dkt. No. 1) and *Notice of Motion for Temporary Restraining Order and Preliminary Injunction* (Dkt. No. 3) ("Preliminary Injunction Motion"), which were both filed by Petitioner Salvador Raymundo Mateo Francisco ("Petitioner" or "Mateo Francisco") on December 10, 2025.[1] Respondents Mary De Anda-Ybarra, Todd Lyons, and Kristi Noem (the "Federal Respondents") filed a response (Dkt. No. 38) in opposition to the complaint and a response (Dkt. No. 37) in opposition to the Preliminary Injunction Motion on December 30, 2025. Petitioner filed separate replies (Dkt. Nos. 42 and 43). Respondent George Dedos is not represented and has not responded, but the Federal Respondents stated that, because his defense was unlikely to differ from theirs, the Court could proceed with a decision. In accordance with Federal Rule of Civil Procedure 65(a)(2), the undersigned held an evidentiary hearing on the Preliminary Injunction Motion and considered the merits of the Petition on January 12, 2026, with Petitioner present.[2] Having reviewed the

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's Order of Reference (Dkt. No. 19), filed on December 10, 2025.

[2] Neither party objected at the hearing to consolidation under Rule 65(a)(2).

Petition, the Preliminary Injunction Motion, the briefs, the evidence, and the law, and having heard the argument of counsel, the Court recommends that the Petition be granted as to the Second and Fourth Claims and denied as moot as to the First, Third, and Fifth Claims. The Court also recommends that the presiding judge (1) order that Petitioner remain released from custody without restraints beyond those that existed before his detention and (2) absent evidence that Petitioner has committed a crime or absconded in his administrative immigration proceedings, enjoin Respondents from re-detaining Petitioner without first providing notice and a pre-deprivation hearing before a tribunal where the government bears the burden of justifying re-detention. Finally, the Court recommends that the Preliminary Injunction Motion be denied as moot in light of the proposed ruling on the Petition and the Court's prior rulings.

## I.    INTRODUCTION

This case is one of many § 2241 habeas cases brought in this District and one of hundreds brought in districts across the nation stemming from a new interpretation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A), by the United States Department of Homeland Security ("DHS"). Previously, when a United States Immigration and Customs Enforcement ("ICE") officer detained noncitizens[3] within the interior of the United States who did not have a pending order of removal, DHS detained them under 8 U.S.C. § 1226 of the INA. *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720-RMR, 2025 WL 2962908, at *1 (D. Colo. Oct. 17, 2025) (appeal filed). On July 8, 2025, however, DHS issued new interim guidance that all noncitizens who enter the country without being admitted or who arrive without proper documentation are subject to mandatory detention, regardless of their length of residency in the country, unless they

___

[3] The INA defines an "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). The Court uses "alien" and "noncitizen" interchangeably in this PFRD.

are paroled under INA § 212(d)(5). *See Escobar Salgado v. Mattos*, __ F.Supp.3d __, 2025 WL 3205356, at * 1 (D. Nev. Nov. 17, 2025); Resp. 12, Dkt. No. 38.

The Board of Immigration Appeals ("BIA") considered this new policy interpretation in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 5, 2025), holding that under the plain language of 8 U.S.C. § 1225(b)(2)(A), immigration judges lack authority to hear bond requests or to grant bonds to aliens who are present in the United States without admission. *Id.* at 225.[4] In that case, the respondent crossed into the United States without inspection in 2022, lived in the United States for years, was granted temporary protected status in 2024 by the United States Citizenship and Immigration Services ("USCIS"), but was arrested after that status expired. *Id.* at 216-17. In *Yajure Hurtado*, the BIA concluded that "[a]liens, like respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id.* at 228. "Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitution an 'admission.'" *Id.*

The BIA considered significant the history and passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which substituted the term "admission" for "entry" and replaced deportation and exclusion proceedings with removal proceedings. *Id.* at 222-23. As the BIA explained, Congress enacted the IIRIRA to remedy the unintended consequence of having created a statutory scheme where aliens who enter without inspection could take advantage of greater procedural and substantive rights afforded in deportation proceedings, while aliens who

---

[4] This opinion is called a "precedential" opinion, which in this context means a decision identified by the BIA as a binding authority on U.S. immigration courts. The Supreme Court recently directed district courts that they "must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). Courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413. Consequently, while binding on the immigration courts, *Yajure Hurtado* is not binding on this Court.

presented themselves at the border were limited to more summary exclusion proceedings. *Id.* at 223 (quoting *Martinez v. Attorney General of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012)). Consequently, according to the BIA, aliens who enter without inspection or admission are "applicants for admission," *id.* at 224, regardless how long they have lived here, until an immigration officer determines that they are "clearly and beyond a doubt entitled to be admitted," *id.* at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)).

"After *Hurtado*, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection." *Escobar Salgado*, 2025 WL 3205356, at * 1. Some district courts around the country have concluded, similarly to *Yajure Hurtado*, that the mandatory detention of noncitizens in analogous situations is lawful and constitutional. *See*, *e.g.*, *Pena v. Hyde*, Civil Action No. 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025). The overwhelming majority of district courts, however, including all the decisions so far from the District of New Mexico, have rejected DHS's interpretation and held it to be unlawful and unconstitutional. *See Barco Mercado v. Francis*, __ F.Supp.3d __, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Petition before the Court is, as Respondents described it at the hearing, somewhat unique among the many cases nationwide. Petitioner presented himself at a port of entry as an unaccompanied child ("UAC"); he was inspected by an immigration officer; he was authorized to

enter the United States under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232(a)(1) ("TVPRA"); he was thereafter released by Health and Human Services ("HHS") to a sponsor (his aunt) under section 1232; he applied for and was granted Special Immigrant Juvenile ("SIJ") status and an employment authorization; the USCIS dismissed without prejudice his removal proceeding; he was subject to a period of deferred action as he awaited the visa that will allow him to apply for adjustment of status to lawful permanent resident; and he has lived in the United States with USCIS permission and without incident for nearly five years. On these particular facts, the Court concludes that Petitioner was admitted into the United States, as that term is defined under 8 U.S.C. § 1101(a)(13)(A), and so he is not "seeking admission" into the United States within the meaning of 8 U.S.C. § 1225(b)(2). Consequently, Section 1226 applies to Petitioner and his mandatory detention under Section 1225 is unlawful under the INA and violates his procedural due process rights.

## II.    FACTUAL BACKGROUND

Mateo Francisco, now a 20-year-old Guatemalan national, came to the United States at the age of 15 as an unaccompanied minor. *See* Hr'g Ex A, Dkt. No. 44-1; Hr'g Ex. 3, ¶¶ 4-7, Dkt. No. 45-3. His mother died when he was 12 years old, and his father's new partner physically abused him. Mateo Hr'g Ex. 3, ¶ 6, Dkt. No. 45-3. On February 5, 2021, Petitioner applied for entry at the Paso Del Norte Port of Entry in El Paso, Texas. Hr'g Ex. A at 2, Dkt. No. 44-1. A Customs and Border Patrol ("CBP") officer interviewed him and determined he was inadmissible under Section 212(a)(7)(A)(i)(I) of the INA. *Id.* at 2-3. He was placed in the care of HHS Office of Refugee Resettlement ("ORR"). *See id.* at 3. On March 4, 2021, the ORR released him into the care of his sponsor, his aunt in New York, in accordance with the TVPRA. *See* Hr'g Ex. 1, Dkt. No. 45-1; Hr'g Ex. 2, Dkt. No. 45-2. DHS initiated removal proceedings against him. *See* Hr'g Ex. 2, Dkt.

No. 45-2; Hr'g Ex. 7, Dkt. No. 45-7. DHS charged him as an "arriving alien" who lacked proper entry documentation, making him subject to removal under INA § 212(a)(7)(A)(i)(I). Hr'g Ex. 2, Dkt. No. 45-2.

On March 17, 2022, Mateo Francisco filed a Form I-360 petition for Special Immigrant Juvenile status. *See* Hr'g Ex. 4, Dkt. No. 45-4.[5] DHS moved to dismiss his removal proceedings without prejudice on March 29, 2022, because Mateo Francisco "appears prima facie eligible to adjust status with USCIS once the Form I-360 is approved." Hr'g Ex. 6, Dkt. No. 45-6. An immigration judge granted the motion to dismiss on March 30, 2022. Hr'g Ex. 7, Dkt. No. 45-7. USCIS approved Mateo Francisco's SIJ petition on December 6, 2022. Hr'g Ex. 4, Dkt. No. 45-4. The Notice informed him that he does "not yet have a visa available to file an application for adjustment of status." *Id.* USCIS placed him in "deferred action" for a period of four years from the date of the notice "unless terminated earlier by USCIS." *Id.* During a period of deferred action, Mateo Francisco "may be issued an employment authorization document." *Id.* He subsequently received an employment authorization valid through December 5, 2026. *See* Hr'g Ex. 5, Dkt. No. 45-5.

Mateo Francisco has lived in the United States for almost five years. *See* Hr'g Ex. 3, ¶¶ 7-14, Dkt. No. 45-3. He attended high school in New York until an illness led to his hospitalization. *Id.* ¶ 10. Instead of returning to high school, he began taking GED classes, studying during the day and working in a chicken factory at night. *Id.*

On November 11, 2025, while Mateo Francisco was driving to pay his cell phone bill, immigration officers stopped his car and eventually detained him. *See id.* ¶ 11. USCIS issued him a Termination Notice dated November 12, 2025, in which USCIS informed him that, in the exercise

---

[5] Criteria for SIJ classification is laid out in 8 U.S.C. § 1101(a)(27)(J), discussed more thoroughly *infra*.

of its discretion, it was terminating his period of deferred action and he "may not appeal or move to reopen/reconsider this decision." Hr'g Ex. 11, Dkt. No. 45-11. It noted, however, that his SIJ classification "remains approved." *Id.*

Mateo Francisco filed a habeas petition in the Western District of New York on November 15, 2025. Prelim. Inj. Mot. 5 n.2, Dkt. No. 3-1. On November 20, 2025, he was served with a Notice to Appear, charging him with being subject to removal under INA § 212(a)(7)(A)(i)(I) for lack of valid entry documents. *See* Hr'g Ex. 10, Dkt. No. 45-10. Subsequently, Petitioner was transferred to the Cibola County Correctional Facility in New Mexico. Petition ¶ 4, Dkt. No. 1. On November 26, 2025, USCIS sent Petitioner a Notice of Intent to Revoke his employment authorization, stating that "USCIS terminated your deferred action on 11/12/2025 and [] you are no longer in a period of deferred action." Hr'g Ex. E, Dkt. No. 44-5. On December 5, 2025, Mateo Francisco voluntarily dismissed the habeas petition filed in New York. Prelim. Inj. Mot. 5 n.2, Dkt. No. 3-1. Five days later, he filed the Petition at issue here in the District of New Mexico. Petition, Dkt. No. 1.

### III.    PROCEDURAL HISTORY

Petitioner seeks habeas relief under 28 U.S.C. § 2241 as well as relief under the All Writs Act, 28 U.S.C. § 1651, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701. Petition ¶ 19, Dkt. No. 1. The Petition asserts five claims arising from his detention: (1) violation of substantive due process under the Fifth Amendment; (2) violation of procedural due process under the Fifth Amendment; (3) violation of the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.3(d); (4) violation of the INA and procedural due process; and (5) violation of the APA, 5 U.S.C. § 706(2)(A). Petitioner asks for the following relief: (i) enjoin Respondents from transferring him away from the jurisdiction of this District pending these proceedings; (ii) declare

that his arrest and detention violate the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the INA and implementing regulations, and the APA; (iii) issue a Writ of Habeas Corpus ordering Respondents to immediately release him from custody without restraints beyond those that existed before his unlawful detention; (iv) order Respondents not to "re-detain Petitioner without notice and a pre-deprivation hearing before this Court where the government bears the burden of justifying re-detention by clear and convincing evidence"; and (v) award reasonable attorney's fees and costs under 5 U.S.C. § 504 and 28 U.S.C. § 2412. Petition 21-22, Dkt. No. 1.

The presiding judge, the Honorable Margeret I. Strickland, directed the Clerk of the Court to serve Respondents and ordered them to respond to the Petition within three days of receipt of service. Order, Dkt. No. 17. Subsequently, counsel entered an appearance on behalf of Respondents Mary De Anda-Ybarra, Todd Lyons, and Kristi Noem. Notice, Dkt. No. 27. Service was made on Respondent George Dedos by United States Postal Service mail on December 16, 2025. *See* Proof of Service, Dkt. No. 26. Although Respondent Dedos, to date, has not responded to the Petition or entered an appearance in the case, counsel for the Federal Respondents represented to the Court that his arguments will align with those of the Federal Respondents. *See* Clerk's Minutes 1, Dkt. No. 34. Counsel for both the Federal Respondents and the Petitioner repeatedly assured the Court that it could proceed to a decision without Respondent Dedos having timely responded to the Petition. *See id.*; Clerk's Minutes 1, Dkt. No. 51. Accordingly, the Court recommends that decision on the merits of the Petition and the Preliminary Injunction Motion be made on the current record. Moreover, given the Federal Respondents' representations that their arguments align with those that would have been made by Warden Dedos, the Court will refer to the respondents collectively as "Respondents" throughout this PFRD.

On December 18, 2025, Petitioner filed an *Emergency Motion for a Temporary Restraining Order Enjoining Transfer* (Dkt. No. 30), seeking to prevent Respondents from transferring him out of this District pending further proceedings. Judge Strickland granted the motion, enjoining Respondents "from transferring Petitioner to any facility outside the District of New Mexico during the pendency of this habeas action" and from "removing or transferring Petitioner outside the United States while this habeas action is pending." Order 2, Dkt. No. 33. Accordingly, the presiding judge has already ordered the first form of relief requested by Petitioner in his Petition, and the undersigned will not further address that relief herein.

After full briefing on the merits of the Preliminary Injunction Motion and the Petition, the undersigned held an evidentiary hearing on January 12, 2026. *See* Clerk's Minutes, Dkt. No. 51. As aforementioned, the Court consolidated the hearing on the motion and Petition without objection. At the conclusion of the hearing, after considering the evidence and arguments of counsel, the undersigned invoked his inherent authority under 28 U.S.C. § 636, *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1991), and *Stow v. Perrill*, No. 94-1282, 1994 WL 377629, at *1 (10th Cir. July 20, 1994), to order the *temporary* release of Petitioner on his own recognizance pending the final resolution of the habeas proceeding. Clerk's Minutes, Dkt. No. 51. Afterwards, the undersigned issued a written order detailing the ruling and its findings that Petitioner had demonstrated a clear case on the merits of the habeas petition to warrant relief. Order 2, Dkt. No. 48. Additionally, the undersigned found that Petitioner is not a danger to the community or a risk of flight, and that Respondents failed to offer any evidence or argument to the contrary. *Id.*

## IV.    LEGAL BACKGROUND

The Court's recommendation centers around the statutory provisions governing mandatory detention under § 1225 and eligibility for a bond hearing under § 1226. After setting out the

background of those INA provisions, the Court will turn to the relevant statutory authority pursuant to which immigration officers first allowed Petitioner to enter the country and then the provisions that allowed him to remain in the United States prior to his detention in November 2025.

### A. Sections 1225 and 1226 of the INA

"Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings" to give "immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See id.* at 287-89. "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.

Generally, a non-citizen "present in the United States who has not been admitted or who arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission," 8 U.S.C. § 1225(a)(1), and must be inspected by immigration officers, *id.* § 1225(a)(3). As relevant here, an "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry." 8 U.S.C. § 1001.1(q). An alien who is caught trying to enter at a place other than a port of entry is treated as an arriving alien. *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (citing 8 U.S.C. §§ 1225(a)(1), (3)). "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after

any such parole is terminated or revoked." *Id.*[6]  "Admission" or "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

An immigration officer may order expeditious removal of an arriving alien without further hearing or review if the officer determines that the alien is "inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i) (in turn citing §§ 182(a)(6)(C), (a)(7))). Aliens also subject to expedited removal are those designated by the Attorney General in his discretion. *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(iii).[7]

"Section 1225(b)(2) is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 583 U.S. at 287. Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding…." 8 U.S.C. § 1225(b)(2)(A); *Jennings*, 583 U.S. at 288. Detention under § 1225(b) is mandatory until immigration officers decide either the application for asylum or until removal proceedings conclude. *Jennings*, 583 U.S. at 299-300. With the exception of temporary parole under 8 U.S.C. § 1182(d)(5)(A) for urgent humanitarian reasons or significant public benefit, "there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Id.* at 300.

---

[6] Section 1182(d)(5) gives the Secretary of Homeland Security discretion to parole temporarily a noncitizen "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). "An alien who is paroled under section 1182(d)(5) of this title … shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B).

[7] "Applicants can avoid expedited removal by claiming asylum." *Thuraissigiam*, 591 U.S. at 109. Applicants who raise an asylum claim are nevertheless detained pending a final determination of credible fear of persecution. *Id.* at 111. If an alien is found not to have that fear, they are detained until they are removed, while those found to have a credible fear may also be detained pending further consideration of the asylum application. *Id.*

In contrast, Section 1226(a) establishes the process of arresting and detaining noncitizens "already present in the United States." *Id.* at 303. As the Supreme Court explained, "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.* The Attorney General "may release the alien" on bond or conditional parole, unless the alien has committed certain criminal offenses or terrorist activities listed in § 1226(c), in which case detention is mandatory. *See* 8 U.S.C. § 1226(a)(2)(A)–(B), (c); *Jennings*, 583 U.S. at 288-89, 303. In 2025, Congress passed the Laken Riley Act, which added additional criminal convictions triggering § 1226(c)'s custodial provisions. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) (codified as amended at § 1226(c)(1)(E)).[8] As a matter of federal regulation, noncitizens detained under § 1226(a) generally "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

## B. Removal Procedures for Unaccompanied Alien Children and the Special Immigrant Juvenile Classification

To enhance efforts to prevent human trafficking and to protect unaccompanied non-citizen children in the United States, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), which put the responsibility for their care with the HHS Secretary. 8 U.S.C. § 1232(a)(1), PL 110-457 (HR 7311) (Dec. 23, 2008). An "unaccompanied alien child" ("UAC") within the meaning of the TVPRA is

> a child who—(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody.

---

[8] Section 1226(c) is not relevant here because it is undisputed Petitioner has no criminal history.

6 U.S.C. § 279(g)(2). A UAC in the custody of the HHS Secretary "shall be promptly placed in the least restrictive setting that is in the best interest of the child" after considering "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). UACs that DHS seeks to remove must be "placed in removal proceedings" under 8 U.S.C. § 1229a and are thus not subject to expedited removal. *Id.* § 1232(a)(5)(D)(i).

Separately, Congress amended the INA to provide for a "special immigrant" category. *See* 8 U.S.C. § 1101(a)(27). The category includes special immigrant juveniles -- immigrants who are present in the United States and have been declared dependent on a state juvenile court and whose reunification with a parent "is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" and for whom a determination has been made that it is not in their best interest to return to their country of origin. *Id.* § 1101(a)(27)(J)(i)-(ii). Eligibility for SIJ status requires the petitioner to file a form petition along with evidence of age, the juvenile court orders, and other evidence. *See* 8 C.F.R. § 204.11(d). The USCIS must then consent to classifying the petitioner as an SIJ after determining whether the request is bona fide. *Id.* § 204.11(b)(5). The USCIS may revoke an approved SIJ classification petition automatically if a juvenile court orders reunification with one or both parents, 8 C.F.R. § 204.11(j)(1)(i), or an administrative or judicial proceeding determines it is in the minor's best interest to be returned to his country of nationality, *id.* § 204.11(j)(1)(ii). Otherwise, the USCIS may revoke after notice "for good and sufficient cause as provided in 8 CFR 205.2." *Id.* § 204.11(j)(2).

"SIJ status is a form of parole that confers eligibility for adjustment to LPR [lawful permanent resident] status to noncitizen minors who have been abused, abandoned, or neglected." *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1085 (9th Cir. 2025). A special immigrant under § 1101(a)(27)(J) will be deemed to have been paroled into the United States for purposes of

adjustment under § 1255(a). 8 U.S.C. § 1255(h). His status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." *Id.* § 1255(a).

There are, however, a limited number of visas available for special immigrants. *See* 8 U.S.C. § 1153(b)(4); *Osorio-Martinez v. Attorney General United States of America*, 893 F.3d 153, 160 n.3 (3d Cir. 2018) ("Congress has set various limits on the number of visas that may be made available, *see* 8 U.S.C. §§ 1151, 1153, resulting in a waiting list when demand for visas exceeds supply, *see* 8 C.F.R. § 245.1(g)(1)."). Because of an ongoing unavailability of and years' wait for visas for SIJs, on March 7, 2022, USCIS issued new policy guidance allowing USCIS to grant deferred action on a case-by-case basis to SIJs who are ineligible to apply for adjustment of status due solely to the unavailability of a visa. *See* USCIPS Policy Alert, PA-2022-10, "Special Immigrant Juvenile Classification and Deferred Action" (Mar. 7, 2022), https://perma.cc/8CTL-QAQY. According to 8 C.F.R. § 236.21(c)(1), deferred action "does not confer any right or entitlement to remain in or reenter the United States" and a "grant of deferred action under this section does not preclude DHS from commencing removal proceedings at any time."

## V.    ANALYSIS

### A.    The Petition should be granted on the Second and Fourth Claims.

A court is authorized to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas*." Soberanes v.*

*Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### 1.    Prudential exhaustion is not required based on futility.

The INA mandates exhaustion as to final orders of removal, but it contains no exhaustion provision regarding challenges to preliminary custody or bond determinations. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Although § 2241 does not expressly require a petitioner to exhaust direct appeals before filing a petition for habeas corpus, as a prudential matter, habeas petitioners must exhaust available administrative remedies before seeking habeas relief under § 2241. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Where exhaustion is not statutorily required, "sound judicial discretion governs." *Gonzalez*, 355 F.3d at 1016 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203.

Petitioner argues that administrative exhaustion is not required in this case based on futility. *See* Petition ¶ 22, Dkt. No. 1. For their part, Respondents merely set out the general law on exhaustion but did not analyze that law as it pertains to Petitioner's case. *See* Resp. 15-16, Dkt. No. 38. At the hearing, Respondents acknowledged that they did not speak affirmatively as to administrative exhaustion in their briefs. They nevertheless contended that Petitioner is not excused and must follow the immigration process to its conclusion before bringing a habeas claim.

Respondents arguably waived the issue of exhaustion by not expressly asserting in their response that Petitioner must exhaust his administrative proceedings and that the proceedings are not futile. To the extent the issue is not waived, the Court will nevertheless address it. The BIA's

*Yajure Hurtado* decision is binding on immigration courts and appears to categorically deny relief to noncitizens like Petitioner who DHS now considers to be subject to mandatory detention under § 1225(b). Petitioner thus has shown that, if he asserted his right to a bond hearing in his immigration case, the immigration judge, being bound by *Yajure Hurtado*, would deny his request for release for lack of jurisdiction to grant bond. Consequently, the Court recommends finding that the futility exception to exhaustion applies and this Court may consider the habeas petition. *Cf. Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-010131-KG-JFR, 2025 WL 3187432, at *4 (D.N.M. Nov. 14, 2025) ("Under *Hurtado*, Immigration Judges ("IJs") lack jurisdiction to provide § 1226(a) bond hearings to individuals in Mr. Pu Sacvin's position, rendering any attempt to seek relief directly from the agency futile."); *Molina Ochoa v. Noem*, No. 1:25-cv-00881-JB-LF, 2025 WL 3125846, at *9-10 (10th Cir. Nov. 7, 2025) (objections filed and decision on PFRD pending) (likewise concluding that exhaustion of administrative remedies was not required in § 2241 habeas case challenging mandatory detention under § 1225 where immigration court was bound to follow *Yajure Hurtado*, which categorically denies relief to noncitizens like petitioner).

**2.    The Petition should be granted on the fourth claim for violation of the INA.**

Turning to the merits, Petitioner contends that he cannot be subject to mandatory detention under § 1225(b)(2)(A) because he was previously released from custody as a UAC, he resided in the United States for nearly five years, and he was granted SIJ classification. Respondents counter that Petitioner is subject to mandatory detention based on the following reasoning: Under § 1225(b)(2), where an alien "is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding…." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" includes a noncitizen who arrives in the United States or who is "present

in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Thus, a noncitizen who enters the country without permission is and remains an applicant for admission, regardless of the duration of the noncitizen's presence in the United States or distance from the border." Resp. 18, Dkt. No. 38. Accordingly, the question before the Court is whether Petitioner is an "applicant for admission" who is "seeking admission" under § 1225(b)(2)(A) or the procedures for apprehending and detaining aliens in § 1226(a) instead apply.

Respondents' reasoning in this case has fundamental flaws. Let's begin foremost with Petitioner's entry. He presented himself to an immigration officer at a port of entry. A CBP officer interviewed him while a medical team screened him and cleared him to travel. Hr'g Ex. A, Dkt. No. 44-1. After the interview, an immigration officer made certain findings regarding Petitioner's nationality and citizenship, his health, his lack of documentation, his age, the circumstances of his arrival, and that he was not a victim of human trafficking. *Id.* Afterwards, although the immigration officer determined Petitioner was inadmissible under Section 212(a)(7)(A)(i)(I), he processed him and transferred him into the custody of the ORR. *Id.* The foregoing sequence demonstrates that an immigration officer thus inspected Petitioner and authorized him to enter the United States under the TVPRA, a Congressionally enacted, lawful statute.

Respondents nevertheless argue that his entry was not "lawful" because he lacked the necessary documents at the time he presented himself to immigration officials to give him permission to enter. The term "lawful" is not separately defined in the INA. *See* 8 U.S.C. § 1101. Congress could have defined lawful entry as tied to having documents, but it did not. The Court declines Respondents' invitation to construe "lawful" so narrowly as to preclude determining an

entry "lawful" where it is allowed by a separate duly enacted statute, in this case § 1232 of the TVPRA. Instead, "lawful" refers to the process in which an alien is inspected and granted entry by an immigration officer into the United States. *See Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010) (explaining that "admission" under § 1101(a)(13)(A) "refers to a procedurally regular admission and not a substantively lawful admission"). Consequently, the process Petitioner initially underwent at the port of entry satisfies the "admission" definition of § 1101(a)(13)(A), such that he is not now "seeking admission" within the meaning of § 1225(b)(2)(A). *Cf. Hing Sum*, 602 F.3d at 1099 (explaining that "admission" in § 1101(a)(13)(A) includes noncitizens "who entered the United States upon inspection and authorization, even though they were inadmissible at the time of entry").

Notably, Congress clarified in the definition when an alien who is allowed entry should not be deemed "admitted." Section 1101(a)(13)(B) provides: "An alien who is paroled under section 1182(d)(5) of this title … shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B). That Congress believed it had to clarify that point suggests that other ways in which an alien is paroled or authorized entry into the country can constitute having been "admitted." Here, Petitioner's authorization and release into the country under § 1232 of the TVRPA constitute an initial admittance and he is no longer an "arriving alien" or "seeking admission." *Cf. Martinez v. Hyde*, __ F.Supp.3d __, 2025 WL 3152847, at *1, 7 (D. Mass. Nov. 12, 2025) (explaining that petitioner, who was a UAC when he arrived to United States and whose custody was transferred to HHS nearly 10 years before his detention and who was granted SIJ status nearly six years before his detention, was not paroled into United States by DHS under § 1182(d)(5)(A), and thus petitioner had not been "arriving alien" for almost a decade).

Significantly, the Court's construction accords with the Supreme Court's understanding of the detention provisions: "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added). Petitioner was permitted in the country as a UAC under the TVPRA. In addition, he later received SIJ classification. The INA defines a "special immigrant" as "an immigrant who is *present* in the United States." 8 U.S.C. § 1101(a)(27)(J) (emphasis added). His SIJ classification further confirms that, because of his long-term presence in the country, he is no longer "seeking admission" within the meaning and context of § 1225(b)(2)(A) and can only be re-detained by following the procedures set forth in § 1226. *Cf. Rodriguez v. Perry*, 747 F.Supp.3d 911, 914, 916 (E.D. Va. 2024) (discussing how petitioner, a noncitizen who arrived at a port of entry in 2013 when he was eight years old and was transferred to the ORR as a UAC, years later received SIJ status, which "weighs in favor of finding that, when ICE arrested and detained him in June 2023, he was an 'alien present' in the United States and was entitled to a bond hearing under § 1226(a)"); *Sarmiento v. Perry*, No. 1:25-cv-01644-AJT-WBP, 2025 WL 3091140, at *3 (E.D. Va. Nov. 5, 2025) (explaining that petitioners' SIJ status requires they be afforded a bond hearing under § 1226(a)); *Del Cid v. Bondi*, No. 3:25-cv-00304, 2025 WL 2985150, at *16 (W.D. Penn. Oct. 23, 2025) (concluding that petitioners, who obtained SIJ status, had been in the country for over four and two years, respectively, and had no criminal history, had shown a very strong likelihood of success on merits of claim that they may only be detained/re-detained under § 1226(a), not § 1225).[9]

---

[9] This interpretation does not blur the line between "admission" and "status," which are distinct concepts in immigration law. *See Sanchez v. Mayorkas*, 593 U.S. 409, 414-16 (2021) (holding that Temporary Protected Status program, which gives foreign nationals nonimmigrant status for humanitarian reasons, does not "admit" them; thus, noncitizen who entered country unlawfully was not "admitted" when conferred TPS status). While a change in status

Nor does this Court's interpretation of "admitted" conflict with whether an immigrant is "inadmissible." The terms are not coterminous. *See Hing Sum*, 602 F.3d at 1093 ("It may seem, at first blush, an oxymoron to be 'admitted' to the United States and yet 'inadmissible' at the same time. But such is the text of the INA and the often opaque world of the immigration statutes."). As relevant here, an immigrant is "inadmissible" if "at the time of application for admission" he did not possess certain documentation specified in 8 U.S.C. § 1182(a)(7)(A)(i)(I). That a noncitizen UAC was admitted in the sense of having been inspected and granted lawful entry under the TVPRA does not mean that he is no longer "inadmissible." Section 1182(a)(7)(A)(i)(I) ties that term to whether he had valid documentation at the time he applied for admission, which in this case is when Petitioner presented himself at the port of entry. Petitioner is seeking to remain in the country despite being "inadmissible" at the time of his entry for lack of documentation, but he is no longer "seeking admission" as he was already inspected and granted entry. *See Del Cid*, 2025 WL 2985150, at *4 (explaining that government may remove SIJ recipients from country for inadmissibility so long as it provides an opportunity to pursue adjustment of status and removes them with process that adequately takes stock of their SIJ status).

The cases upon which Respondents rely are readily distinguishable on the critical factual issue as to lawfulness of entry. Those cases each involved surreptitious entry, not inspection and authorization at a port of entry. They thus do not inform the Court's analysis in this case. *Cf. Yajure Hurtado*, 29 I. & N. Dec. at 216, 228 (describing entry as surreptitious and without inspection); *Mejia Olalde v. Noem*, No. 1:25-cv-00168-JMD, 2025 WL 3131942, at *1 (E.D. Mo. Nov. 10, 2025) (petitioner entered United States without inspection and was detained after living in United

---

post-entry may "not eliminate the disqualifying effect of an unlawful entry," the lawfulness of the initial entry is based on inspection and authorization by an immigration officer to enter. *Id.* at 416 (describing admission as having entered country after inspection and authorization).

States for decades); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351, at *2, 7-10 (D. Neb. Sept. 30, 2025) (concluding that petitioner was properly detained under § 1225(b)(2) as an "applicant for admission," despite alien's presence in the country for over ten years, where evidence indicated he was not admitted or paroled into U.S. after inspection by an officer and he wished to stay in country); *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *1, 4 (S.D. Cal. Sept. 24, 2025) (determining that petitioners, noncitizens residing in United States who originally entered without inspection or parole, are subject to mandatory detention under § 1225(b)(2) because they were not previously admitted, and thus are applicants for admission); *Pena v. Hyde*, No. 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025) (denying 2241 petition of Brazilian national, who entered the country illegally in 2005 and whose wife subsequently filed an I-130 petition on his behalf, explaining that approval of I-130 petition did not endow him with lawful immigration status and he remained "an applicant for admission" under § 1225(b)(2)).

Section 1226 applies to Petitioner because he was initially inspected and authorized to enter the United States under the TVPRA, and he has remained here for almost five years, receiving SIJ status, before DHS detained him. He is present in the United States within the meaning of § 1226 and is not "seeking admission" within the meaning of § 1225(b)(2). As such, he was entitled to receive a bond hearing at the outset of his detention. Petitioner's mandatory detention for more than 60 days without a bond hearing under Section 1226 is unlawful under the INA. The Court thus recommends granting the Petition on the fourth claim for relief.

### 3.    The Petition should be granted on the second claim for violation of procedural due process.

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend.

V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Constitution gives the political branches "plenary authority to decide which aliens to admit" and the "power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139. An alien seeking initial entry to the United States is only entitled to the process authorized by Congress. *Id.* at 138-39. "While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107 (holding that alien detained near border shortly have unlawful entry did not "effect an entry" and only has those rights regarding admission that Congress provided by statute). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

Respondents argue that Petitioner's only rights are confined to those granted by Congress by statute, which have been provided in this case. Resp. 21, Dkt. No. 38. Even if that proposition were true and Petitioner only has the due process rights afforded by Congress via the statutory procedures it provided, as explained *supra*, Congress authorized noncitizens in Petitioner's situation to be afforded a bond hearing under § 1226. Consequently, Respondents' detention of Petitioner for more than 60 days without the bond hearing violated both his statutory rights and his procedural due process rights.

In light of this recommendation, the Court need not go further and decide whether Petitioner had additional due process rights beyond those conferred by statute. *Cf. Cortez-Gonzalez v. Noem*, __ F. Supp. 3d __, No. 2:25-cv-00985-MLG-KK, 2025 WL 3485771 at *5 (D.N.M. Dec. 4, 2025) ("Given that § 1226(a) is controlling, Cortez-Gonzalez is entitled—as a right—to an individualized bond hearing [so her] continued detention without such review constitutes an ongoing violation of her right to due process."); *Velasquez Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729, at *5 (D.N.M. Sept. 17, 2025) ("Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ....Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process."). Moreover, Respondents offered no other argument to refute Petitioner's procedural due process arguments under *Mathews v. Eldridge*, 424 U.S. 319 (1976). They thus waived any such arguments.[10] For all these reasons, the Court recommends that the Petition be granted as to the second claim for violation of Mateo Francisco's procedural due process rights.

### 4. The remedy for violation of the INA and procedural due process is release where Respondents have no evidence Petitioner is a danger to the community or flight risk.

---

[10] Although unnecessary to the recommendation on the procedural due process claim, it is notable that Petitioner still has his SIJ classification, which has not been revoked to date. As such, he is on the precipice of lawful permanent resident status as soon as the visa backlog relents, and a visa is available. *See Osorio-Martinez v. Attorney General United States of America*, 893 F.3d 153, 174 (3d Cir. 2018) ("SIJ designees stand much closer to lawful permanent residents than to aliens present in the United States for a few hours before their apprehension" as they "are a hair's breadth from being able to adjust their status"). These facts suggest Petitioner is not merely "on the threshold" for due process purposes. *See id.* at 171 (explaining that Congress afforded aliens with SIJ classification "a host of procedural rights designed to sustain their relationship to the United States and to ensure they would not be stripped of SIJ protections without due process"); *Rodriguez*, 747 F.Supp.3d at 919 ("Given that Sandoval is an SIJ designee who is accorded significant benefits and procedural protections that put him 'a hair's breadth from being able to adjust [his] status,' the Court finds that he is entitled to procedural due process under the Fifth Amendment. Procedural due process mandates that Sandoval receive a prompt, individualized bond hearing.").

Generally, the remedy for determining that Respondents violated a petitioner's § 1226 rights would be to order an individualized bond hearing under § 1226(a). *Cf. Cortez-Gonzalez*, 2025 WL 3485771 at *3, 6 (requiring bond hearing within seven days of decision after determining petitioner was entitled to bond hearing under § 1226). The purpose of the bond hearing is to determine whether the petitioner is a danger to the community or a flight risk. *See Intriago-Sedgwick v. Noem*, 1:25-cv-1065-MIS-LF, 2025 WL 3688155, at *8 (D.N.M. Dec. 19, 2025), *recommendations adopted by presiding judge,* Order (Dkt. No. 27, filed Jan. 6, 2026). Where, however, the government has not articulated a legitimate interest in detaining the petitioner, immediate release is appropriate. *Id.* Such is the case here.

It is undisputed that Mateo Francisco was initially released from detention back in 2021, which necessarily would have involved a finding that he was not a danger or flight risk. *See* 8 U.S.C. § 1232(c)(2)(A) (UAC in HHS custody "shall be promptly placed in the least restrictive setting that is in the best interest of the child" after HHS Secretary considers "danger to self, danger to the community, and risk of flight"). In the nearly five years he has lived in the United States, he has not been arrested or convicted of a crime. *See* Hr'g Ex. 3, ¶ 12, Dkt. No. 45-3. Moreover, at the evidentiary hearing, the Court inquired whether Mateo Francisco had done anything wrong to bring the current administrative consequences on himself. Respondents replied that they had no information to suggest he had. Nor did Respondents have any information suggesting that he had missed any immigration hearings or check-ins or had otherwise violated any condition of release. When asked by the Court whether any DHS employee had re-evaluated Petitioner's danger to the community or risk of non-appearance, counsel replied that the only evidence she had to present to the Court was the I-213 from 2025. Moreover, in his substantive due process claim, Petitioner had specifically raised the issue of lack of danger or flight risk, and Respondents failed to rebut the

argument or present any evidence to the contrary. Having examined the entire record, the Court recommends finding no basis to determine Mateo Francisco is either a danger to the community or a risk of flight sufficient to justify his re-detention. Consequently, the government does not have a legitimate interest in detaining Petitioner, while Petitioner possesses a strong liberty interest in his release. For all the foregoing reasons, continued release is the most appropriate remedy to redress the violation of the INA and Petitioner's due process rights. *See id.* at *10.

Petitioner additionally seeks an order that Respondents cannot re-detain him "without notice and a pre-deprivation hearing before *this Court* where the government bears the burden of justifying re-detention by clear and convincing evidence." Petition 22, Dkt. No. 1 (emphasis added). In their briefs, Respondents did not specifically address this requested remedy. At the hearing, when asked about this omission, Respondents acknowledged that they had waived the issue. The Court will therefore recommend that this form of relief be granted, but only because objection to it was waived. And the Court does so with two caveats. First, as conceded by Petitioner's counsel at oral argument, the right to a pre-deprivation hearing does not apply to a circumstance in which Petitioner has either committed a crime or absconded in his immigration proceeding. And second, as discussed at the hearing, the Court has serious questions regarding the workability and jurisdiction of any re-detention hearing taking place before the presiding Article III judge in New Mexico (far from New York where Petitioner resides), particularly after this case is closed. Petitioner admitted that courts ordering this form of relief are merely stating that the hearing must be before a neutral arbiter without more specificity. Given the practical and jurisdictional difficulties involved, the Court recommends granting the relief requested for a pre-deprivation hearing but before a neutral tribunal. Furthermore, because the Court assumes the good faith, professional competence, and subject matter expertise of America's cadre of

immigration judges, the Court considers them to be an appropriate, effective, and neutral tribunal. That assumption squares with the INA's delegation to immigration judges of responsibility for conducting tens of thousands of bond hearings every year.

One last point must be addressed concerning the proper relief. Mateo Francisco requests in the Petition that he be immediately released "from custody without restraints on his liberty beyond those that existed prior to his unlawful detention." Petition 22, Dkt. No. 1. At the hearing, and for the first time, Petitioner asserted that the status quo prior to his detention compels restoring his deferred action status. The Court, however, recommends finding that this issue was not properly raised or preserved in the Petition, or in the written briefs, and thus Petitioner's request to restore his deferred action status is belated and should be denied.

**B.     The Court need not address Petitioner's First, Third, and Fifth claims.**

Since the undersigned recommends the Court grant habeas relief, including release from custody, on the second and fourth claims for relief, granting further relief under Petitioner's remaining claims under the substantive Due Process Clause, Fourth Amendment, and APA would be redundant to and coterminous with the relief awarded on the second and fourth claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address additional claim on writ of habeas corpus where conclusion on one claim renders relief on separate claim cumulative); *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002) ("Because of our grant of habeas relief on this claim, we decline to address the remaining claims of error."). *See also Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445-46 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them…. If no additional relief would have been warranted, a constitutional decision would have been unnecessary and therefore inappropriate."). Petitioner agreed at the hearing that, if he prevailed on the second and fourth claims and was granted

immediate release and an order enjoining his re-detention without a pre-deprivation hearing, the Court need not reach the remaining claims. Where no additional substantive relief would be awarded, the Court recommends finding it unnecessary to declare whether Petitioner's arrest and detention violate substantive due process, the Fourth Amendment, or the APA.

### C. The Preliminary Injunction Motion should be denied as moot.

In Petitioner's *Notice of Motion for a Temporary Restraining Order and Preliminary Injunction*, he seeks the following forms of relief: (1) an order directing Respondents to release Petitioner from custody immediately, without restraints on his liberty beyond those that existed prior to his unlawful detention; (2) an order enjoining Respondents from re-detaining him without notice and a pre-deprivation hearing before this Court where the government bears the burden of proof justifying re-detention by clear and convincing evidence; and (3) an order enjoining Respondents from transferring him outside the District of New Mexico pending final resolution of this case. Prelim. Inj. Mot. 1, Dkt. No. 3. The Court has consolidated the decision on the motion with the Petition, so the relief requested in the motion duplicates the relief the Court recommends when granting the second and fourth claims in the Petition. In the meantime, the presiding judge's December 19, 2025 Order enjoined Petitioner's transfer outside this District or the United States while this case is pending, so the third request is moot. The undersigned released Petitioner on his own recognizance and without any post-release monitoring or supervision pending final resolution of his habeas petition. No further relief is required until the presiding judge decides the merits of the Petition. Accordingly, the Court recommends that the Preliminary Injunction Motion be denied as moot.

### VI.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** the following:

1. The *Verified Petition for Writ of Habeas Corpus and Complaint* (**Dkt. No. 1**) should be **GRANTED** as to the **second and fourth claims**.

2. The *Verified Petition for Writ of Habeas Corpus and Complaint* (**Dkt. No. 1**) should be **DENIED AS MOOT** as to the **first, third, and fifth claims**.

3. Petitioner's *Notice of Motion for Temporary Restraining Order and Preliminary Injunction* (**Dkt. No. 3**) should be **DENIED AS MOOT**, given that full relief should be awarded on the second and fourth claims for relief in the Petition.

4. The Court should declare that Petitioner's detention for over 60 days without a bond hearing violates the INA and his procedural due process rights under the Due Process Clause of the Fifth Amendment.

5. The Court should order that Petitioner remain released from custody without restraints beyond those that existed before his unlawful detention.

6. The Court should enjoin Respondents from re-detaining Petitioner -- absent evidence that Petitioner has committed a crime or absconded in his administrative immigration proceedings -- without first providing notice and a pre-deprivation hearing before a neutral tribunal where the government bears the burden of justifying re-detention by clear and convincing evidence.

7. The Court should retain jurisdiction over this matter to decide any future motion for an award of reasonable attorney's fees and costs under the EAJA.

**SO RECOMMENDED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that**

**party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE