**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

SALVADOR RAYMUNDO MATEO
FRANCISCO,

      Petitioner,

v.                                      No. 1:25-cv-1229 MIS-GJF

GEORGE DEDOS, et al.,

      Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PETITIONER'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE EQUAL ACCESS FOR JUSTICE ACT (DKT. NO. 56)

THIS MATTER is before the Court on the *Motion for Attorneys' Fees and Costs Pursuant to the Equal Access for Justice Act* (Dkt. No. 56), filed by Petitioner Salvador Raymundo Mateo Francisco ("Petitioner" or "Mateo Francisco") on March 6, 2026.[1] Petitioner, having received a favorable ruling by this Court's conclusion that his detention violated the Immigration and Nationality Act ("INA") and Due Process Clause, asserts he is entitled to fees and costs under the Equal Access to Justice Act ("EAJA"). Mot. 1, Dkt. No. 56. Respondents Mary De Anda-Ybarra, Todd Lyons, and Kristi Noem (the "Federal Respondents") filed an *Objection to Petitioner's Motion for Attorneys' Fees and Costs Pursuant to EAJA* in opposition. Resp., Dkt. No. 68. Petitioner replied. Reply, Dkt. No. 69.[2] This matter is thus ready for decision.

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's Order of Reference (Dkt. No. 66), filed April 9, 2026.

[2] Although Respondent George Dedos to date has not responded to the Petition or entered an appearance in the case, counsel for the Federal Respondents represented to the Court that his arguments generally will align with those of the Federal Respondents, and both parties agree the Court may move forward with the case without Warden Dedos's separate representation. *See* Clerk's Minutes 1, Dkt. No. 34. The Court will refer to the Federal Respondents and Warden Dedos collectively as "Respondents."

The primary issues are whether Respondents' position was substantially justified and whether there are special circumstances that make an award of fees unjust. Having reviewed the motion, response, reply, the evidence, and the law, the Court recommends that the motion for attorneys' fees and costs be granted.

## I.    BACKGROUND

The Court incorporates the facts set forth in its PFRD filed January 20, 2026, and adopted by the presiding judge. PFRD 5-7, Dkt. No. 53; Order, Dkt. No. 54. By way of summary,

> Petitioner presented himself at a port of entry as an unaccompanied child ("UAC"); he was inspected by an immigration officer; he was authorized to enter the United States under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232(a)(1) ("TVPRA"); he was thereafter released by Health and Human Services ("HHS") to a sponsor (his aunt) under section 1232; he applied for and was granted Special Immigrant Juvenile ("SIJ") status and an employment authorization; the USCIS dismissed without prejudice his removal proceeding; he was subject to a period of deferred action as he awaited the visa that will allow him to apply for adjustment of status to lawful permanent resident; and he has lived in the United States with USCIS permission and without incident for nearly five years.

*Id.* at 4-5. Immigration officers nonetheless detained him on November 11, 2025, asserting he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.* at 6-7, 16.

Petitioner asserted five claims in his habeas petition. *Id.* at 7. The undersigned held an evidentiary hearing on January 12, 2026. *Id.* at 9. At the conclusion of the hearing, after considering the evidence and arguments of counsel, the undersigned invoked the Court's inherent authority under 28 U.S.C. § 636, *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1991), and *Stow v. Perrill*, No. 94-1282, 1994 WL 377629, at *1 (10th Cir. July 20, 1994), to order the temporary release of Petitioner on his own recognizance pending the final resolution of the habeas proceeding. PFRD 9, Dkt. No. 53. Afterwards, the undersigned issued a written order detailing the ruling and its findings that Petitioner had demonstrated a clear case on the merits of the habeas petition to warrant

relief. *Id.* Additionally, the undersigned found that Petitioner is not a danger to the community or a risk of flight, and Respondents failed to offer any evidence or argument to the contrary. *Id.*

Subsequently, the undersigned filed a PFRD recommending that the petition be granted as to the second and fourth claims (violation of procedural due process under the Fifth Amendment and violation of the INA) but denied as moot on the first, third, and fifth claims (violation of substantive due process under the Fifth Amendment; violation of the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.3(d); and violation of the APA). *Id.* at 7, 28. Among other things, this Court advised declaring that Petitioner's detention for over 60 days without a bond hearing violates the INA and his procedural due process rights and ordering that Petitioner remain released from custody without restraints beyond those that existed before his unlawful detention. *Id.* at 28.

Neither party filed objections to the PFRD. On February 4, 2026, the Honorable Margaret I. Strickland entered an Order adopting the PFRD. Order, Dkt. No. 54. The Court separately entered Final Judgment but retained jurisdiction to entertain any motions for attorneys' fees. *Id.* at 3; Final J., Dkt. No. 55.

On March 6, 2026, Petitioner filed his motion for attorney's fees and costs. Pet'r's Mot., Dkt. No. 57. After the deadline expired with no response, Judge Strickland found that Respondents consented to the motion and granted it. Order 1-2, Dkt. No. 57. Respondents subsequently moved to reconsider and requested additional time to respond. Mot. to Reconsider, Dkt. No. 61. Judge Strickland granted the request, vacated her Order, reinstated the motion for attorney's fees, and provided additional time to respond. Order, Dkt. No. 65. She then referred the motion for the undersigned's consideration. Order, Dkt. No. 66. Respondents filed a response in accordance with the new deadline and Petitioner replied. *See* Resp., Dkt. No. 68; Reply, Dkt. No. 69.

Respondents do not contest that Petitioner is the prevailing party, that Petitioner has the requisite financial qualifications under 28 U.S.C. § 2412, or counsel's time as accounted for in the motion. Resp. 3, Dkt. No. 68. They do argue, however, that their position was substantially justified and that special circumstances weigh against an EAJA award. *Id.* at 4. Respondents further contend that the district court should exercise its discretion and decline to award fees related to preparation of the EAJA motion and reply thereto. *Id.* at 3-4 & n.1.

## II.    STANDARD

"The Equal Access to Justice Act (EAJA) directs a court to award 'fees and other expenses' to private parties who prevail in litigation against the United States if, among other conditions, the position of the United States was not 'substantially justified.'" *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 155 (1990) (quoting 28 U.S.C. § 2412(d)(1)(A)). The EAJA authorizes fees in habeas actions challenging immigration detention. *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

To be eligible for an EAJA fee award, an individual cannot have a net worth exceeding $2,000,000 at the time the civil action is filed, 28 U.S.C. § 2412(d)(2)(B), and must file the application for attorneys' fees within thirty days of final judgment, 28 U.S.C. § 2412(d)(1)(B). If the petitioner meets the eligibility requirement, "a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007). The petitioner bears the burden of proving that he is the prevailing party, eligible to receive an award, and the amount sought, including an itemized statement. *See* 28 U.S.C. § 2412(d)(1)(B); *Scarborough v. Principi*, 541 U.S. 401, 414 (2004).

The burden then shifts to the government to demonstrate that its position was substantially justified or that special circumstances make an award unjust. *See Scarborough*, 541 U.S. at 414;

*Hackett*, 475 F.3d at 1170, 1172. As to the substantially justified element, the government has the burden to show its position was reasonable in law and fact. *Hackett*, 475 F.3d at 1172. In other words, it must show it was "justified to a degree that could satisfy a reasonable person." *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Even if incorrect, the government's position can be substantially justified. *Id.* Both the government's prelitigation conduct and its litigating position must be substantially justified. *See id.* at 1174.

III.    ANALYSIS

As for the eligibility determination, Respondents do not contest that Petitioner satisfies it or that he is a prevailing party. Petitioner timely filed his fee application. The burden thus shifts to Respondents to show either that their position is substantially justified or special circumstances exist that make an award unjust.

A.  **Respondents failed to meet burden that position was substantially justified.**

"[T]he government must establish three components to meet this test of reasonableness: a reasonable basis for the facts asserted; a reasonable basis in law for the legal theory proposed; and support for the legal theory by the facts alleged." *Harris v. R.R. Retirement Bd.*, 990 F.2d 519, 520–21 (10th Cir. 1993) (citing *Gatson v. Bowen*, 854 F.2d 379, 380 (10th Cir. 1988)). This Court disagreed with Respondents on the merits of the main argument in the case and concluded that Petitioner's detention violated the INA and his due process rights. Being wrong, however, is not the standard. Reasonableness is.

Before passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 8 U.S.C. § 1252(a)(1) provided that noncitizens arrested in the United States pending a determination of deportability could be released on bond. *See* 8 U.S.C. § 1252(a)(1) (1996). After passage of the IIRIRA, § 1226(a) now governs the apprehension and detention of

aliens on a warrant. 8 U.S.C. § 1226(a). When Congress passed the IIRIRA, it noted that the new § 1226(a) "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. 104-469(I), at 229 (Mar. 4, 1996). The Executive Office for Immigration Review drafted regulations in 1997 similarly explaining that noncitizens present in the country without having been admitted or paroled, despite remaining applicants for admission, were nonetheless eligible for bond and bond redetermination under § 1226. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Given the longstanding practice of detaining noncitizens living in the United States on an arrest warrant and with the chance for bond, the legislative history suggests that Congress did not intend to alter this practice with the IIRIRA. Moreover, the fact that for decades the Executive Branch also did not interpret the IIRIRA in the manner urged by Respondents in this case or to use its purported mandatory detention authority signifies that "seeking admission" meant seeking lawful entry at the border. *Cf. Bankamerica Corp. v. United States*, 462 U.S. 122, 130-32 (1983) (explaining that, although authority granted by Congress cannot evaporate through lack of administrative exercise, the Government's failure for over 60 years to exercise the power it now claims under the statute strongly suggests that the statute should not be interpreted as granting such power). Consequently, at the time Respondents began pursuing their new mandatory-detention policy, that policy had scant support in legislative history or precedent.

Since pursuing this detention policy, the district courts have largely rejected the Government's position. That was certainly the case at the time Mateo Francisco was detained. Since the litigation of this petition concluded, circuit courts have begun weighing in on the issue as to whether § 1225's mandatory detention provisions apply to aliens who entered the country without lawful admission or inspection years before. A circuit split has emerged. *Compare Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026) (holding that aliens who entered United States many years ago without inspection and lacking legal documents authorizing admission may be detained without bond under § 1225(b)(2)(A)); *Avila v. Bondi*, 170 F.4th 1128, 1133-34, 1138 (8th Cir. 2026) (same), *with Barbosa Da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026) (concluding that government's novel interpretation of immigration statutes defies § 1226(a)'s plain text and § 1225(b)(2)(A) does not apply to noncitizens who are present in United States after entering without inspection and admission, and who were not apprehended while entering the country or shortly thereafter); *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, __ F.4th __, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026) ("The text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing IIRIRA, yield the conclusion that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here"); *Lopez-Campos v. Raycraft*, __ F.4th __, 2026 WL 1283891, at *1-3 (6th Cir. May 11, 2026) (joining Second and Eleventh Circuits in holding that § 1225(b)(2)(A) does not apply to petitioners who resided in United States without lawful status for years before being arrested and detained without a bond hearing).

This Court need not decide the reasonableness of the legal theory in those cases, however, because this case presented a different factual scenario. Respondents did not address the support

for the legal theory *based on the facts alleged* in this petition. Respondents failed to justify their position that Mateo Francisco, a minor who entered the United States under the TVPRA and resided here for years without any criminal history, should be mandatorily detained. As this Court explained, Respondents' position had "fundamental flaws." PFRD 17, Dkt. No. 53. Petitioner was inspected and authorized to enter the United States under the TVPRA, a Congressionally enacted, lawful statute, and thus, he was previously lawfully admitted and not "seeking admission" within the meaning of § 1225(b)(2)(A). *See id.* at 17-18. The Court therefore recommends finding that Respondents failed to justify the reasonableness of their legal position based on the facts pertinent to this case. *Cf. Aguilar v. Blanche*, Case No. 1:25-cv-00996-KWR-KK, 2026 WL 1078966, at *3 (D.N.M. Apr. 21, 2026) (Riggs, J.) (explaining that Court need not reach question of whether Government was substantially justified as to legal position where it failed to address factual allegations and to "justify the mandatory detention of Petitioner—who came to the United States as a child and had resided here for well over a decade—and how the facts reasonably supported its legal theory").

### B.  Special circumstances do not make an award unjust.

Respondents argue that their agency level actions were bound by the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and they should not be penalized for adhering to it. This argument, however, misses the mark.

From 1997 to 2025, through five successive presidential administrations, when United States Immigration and Customs Enforcement ("ICE") detained noncitizens within the interior of the United States who did not have a pending order of removal, it did so under 8 U.S.C. § 1226. *Buenrostro-Mendez*, 166 F.4th at 500. On July 8, 2025, however, DHS issued new interim guidance that all noncitizens who enter the country without being admitted or who arrive without proper

documentation are subject to *mandatory* detention, regardless of their length of residency in the country, unless they are paroled under INA § 212(d)(5). *See id.* The Board of Immigration Appeals ("BIA") considered this new policy interpretation in *Yajure Hurtado*. The BIA held that the plain language of 8 U.S.C. § 1225(b)(2)(A) deprived immigration judges of authority to hear bond requests or to grant bonds to aliens who are present in the United States without admission. *Id.* at 225. The Attorney General, however, has authority to review and overrule BIA decisions. *See* 8 C.F.R. § 1003.1(g)(1) ("Except as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board and decisions of the Attorney General are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States."); *id.* § 1003.1(h)(1) ("The Board shall refer to the Attorney General for review of its decision all cases that … [t]he Attorney General directs the Board to refer to him."). Respondents therefore "are only 'bound' by Hurtado because they want to be." *Makarenko v. Mullin*, 1:26-cv-00225-MIS-GBW, 2026 WL 1396528, at*5 (D.N.M. May 19, 2026) (Strickland, J.). *See also Aguilar*, 2026 WL 1078966, at *4 (rejecting "Government's attempt to cast the individual respondents as anything less than the leaders of their respective agencies, departments, and institutions," especially where Attorney General has authority to overturn BIA precedent).

DHS instituted the new mandatory detention policy. It makes its own policy choices as to which aliens to arrest and subject to mandatory detention. It chose to arrest and detain Mateo Francisco, a noncitizen who arrived in the United States years prior as a minor and who the Government initially permitted to enter the country under the TVPRA. No special circumstances are present that would make an EAJA fee award unjust in this case. *See id.* at 9-10.

### C. Court will award requested legal fees, including fees for litigating EAJA award.

Once the court determines that EAJA fees should be awarded, it must determine what fee is reasonable. *Jean*, 496 U.S. at 161. The EAJA covers the costs of all phases of successful civil litigation, including the cost of litigating fee disputes. *See id.* at 162-66. The lodestar method is used to calculate the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000).

Regarding the reasonableness of the fees, Respondents argue that the Court should not award fees related to the preparation of the EAJA motion itself. Such fees, however, are permitted, especially where, as here, Respondents contest Petitioner's entitlement to fees. The Court finds no reason to decline to award fees for the cost of litigating the EAJA fee award in this case, including the fees sought for time spent on the reply brief.

Respondents do not otherwise contest the amount of the fee sought. The Court has reviewed the fee request and the evidentiary support for it. The Court recommends finding the requested hourly rates reasonable. While the fee request is sizeable, considerable litigation occurred in this case to achieve the result. Multiple attorneys worked on the case for Petitioner. Respondents have not argued that requested work conducted by any of the attorneys or paralegals was duplicative or not warranted. Given that Respondents have not contested the reasonableness of the fee request outside the preparation of the EAJA briefing, the Court recommends awarding the full amount requested of $37,098.59 ($35,029.71 plus $2,068.88 for the time spent on the reply brief).

## IV.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** Petitioner's *Motion for Attorneys' Fees and Costs Pursuant to the Equal Access for Justice Act* (**Dkt. No. 56**) be

10

**GRANTED**. The Court further recommends awarding attorneys' fees and costs under the EAJA

to Petitioner in the amount of **$37,098.59**.

        **SO RECOMMENDED.**

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

11